UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KHADAR I. ADAWEH,                    )
                                     )
    Plaintiff,                       )
                                     )
v.                                   )  1:11-cv-00172-GZS
                                     )
CORRECTIONAL MEDICAL SERVICES,       )
et al.,                              )
                                     )
    Defendants                       )

**RECOMMENDED DECISION
RE: MOTION FOR PRELIMINARY INJUNCTION (DOC. NO. 7)
MOTION TO DISMISS (DOC. NO. 17), AND
MOTION TO SUPPLEMENT COMPLAINT (DOC. NO. 15)**

**Motion for a Preliminary Injunction**

Adaweh alleges that Correctional Medical Services, now known as Corizon, and several individual medical providers acted with deliberate indifference to his serious dental issues. He alleges that he received a delayed root canal and that the defendants failed to treat some cavities in a timely manner, resulting in pain and tooth extraction. His complaint documents that he did receive significant treatment at the dental clinic at the Maine State Prison from his initial time of incarceration in 2007 through September 17, 2009. That treatment culminated on September 17, 2009, with three tooth extractions and fillings for cavities that he claims he "never knew he had." (See Compl. Statement of Claim ¶ 111, Doc. No. 1-1.) The complaint does not allege that Adaweh is suffering from any current dental issues[1] or that any medical providers currently are neglecting his dental health. Despite the allegations in his complaint, Adaweh now states in this

---

[1] The Motion to Supplement, filed after this motion, does allege another problem in late May 2011. However, this motion for preliminary injunction was filed on April 26, 2011, and I base my recommendation on the allegations set forth in the motion and the original complaint.

motion that he "has several teeth with cavities" and needs a preliminary injunction "to ensure that he receives proper dental care."

In the First Circuit a plaintiff must actually satisfy four criteria in order to obtain a preliminary injunction:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir.1996). As the Court of Appeals for the First Circuit has said on a number of occasions, the likelihood of success on the merits is of primary importance. Id. at 16 (citing cases).

Adaweh wants preliminary injunctive relief in order "to ensure he receives proper dental care." (Mot. Prelim. Inj. at 1, ¶ 2, Doc. No. 7.) The defendants assert that the care they have been providing is proper and adequate. Indeed, Adaweh's complaint reveals that he received "root canals on [his] chipped tooth in stages on March 25, April 1, and October 15, 2008." (Compl. at 5-6, ¶ 44.) On August 26, 2008, he had his teeth cleaned. (Id. ¶ 45.) On March 30, 2009, Adaweh again had his teeth cleaned. (Id. ¶ 71.) On September 9, 2009, Adaweh had three teeth extracted. (Id. ¶ 110.) Finally, as indicated above, on September 17, 2009, Adaweh had several cavities filled. (Id. ¶ 111.) There are no allegations about ongoing visits to the dental clinic since September 2009, nor, more significantly, are there any allegations of ongoing submission of grievances or denial of dental treatment in 2010 or 2011.

This lawsuit appears to be about whether the defendants were deliberately indifferent to Adaweh's serious medical/dental needs in 2007-2009. The defendants obviously disagree with Adaweh's assessment. Defendants have an obligation to provide reasonable ongoing dental

care; the preliminary injunction sought by Adaweh is redundant of that continuing legal obligation on their part. To the extent that Adaweh's motion is analyzed under the four prong preliminary injunction standard, he simply has failed to meet his burden of showing the ultimate likelihood of success on the merits. At this juncture his suit will proceed against certain of the named defendants and on a better developed record it will be determined whether it is more likely than not that certain of the defendants were deliberately indifferent to serious medical needs. However it is not possible to say simply based on Adaweh's own complaint allegations that there is the necessary likelihood of success on the merits that would warrant preliminary injunctive relief, even if the relief sought were for some identifiable specific relief, which it is not. Accordingly I recommend that the Court deny the motion for preliminary injunction.

## Motion to Dismiss

Three of the defendants in this lawsuit, Corizon, f/k/a Correctional Medical Services, Inc., Tammy Hatch, and Wendy McLoon, have moved to have the complaint dismissed against them. Pursuant to Federal Rules of Civil Procedure 12(b)(6), a claim or complaint may be dismissed if it fails to state a claim upon which relief can be granted. In Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009) the United States Supreme Court summarized: "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 1949 (quoting Fed. R. Civil P. 8(a)(2)). It reiterated, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice

if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

Under Iqbal to survive a motion to dismiss for failure to state a 42 U.S.C. § 1983 claim a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 1949 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). I reiterate that adding a conclusory assertion of a constitutional violation "will not do." Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555).

The First Circuit has long acknowledged, "[i]t is now axiomatic that the doctrine of *respondeat superior* does not apply to claims under section 1983." Gaudrault v. Salem, 923 F.2d 203, 209 (1st Cir. 1990). This principle has been extended to the analysis of liability of private institutions for the acts of their employees. See, e.g., Nelson v. Prison Health Services, 991 F.Supp. 1452, 1465 (M.D. Fla. 1997) ("[A] private corporation like Prison Health Services cannot be held liable on the basis of the doctrine of respondeat superior"). In the municipal context, "a plaintiff must show that a policy or custom of [a governmental employer] led to the constitutional deprivation alleged." Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989).

Adaweh alleges that Corizon failed to establish certain "safeguards" necessary to prevent any unconstitutional actions from transpiring. This claim is simply insufficient as a matter of law to allow his claim against Corizon to proceed, and is precisely the kind of "[t]hreadbare recital[]" of an element of institutional liability that is no longer sufficient in the post-Iqbal world. See Iqbal, 129 S. Ct. at 1949-50. The primary defendants, Victoria Matthews and Theresa Kesteloot, are not alleged to have followed any custom or policy dictated by Corizon.

4

Adaweh simply attempts to hold Corizon responsible for its employees' unconstitutional acts. This theory of recovery is exactly the type of respondeat superior liability which is not permitted under § 1983.

Wendy McLoon, according to the allegations in the complaint, was supportive and sympathetic to Adaweh's plight. During a cleaning on August 26, 2008, where he told Defendant McLoon that he had "filed several sick call slips in regards of teeth with minor cavities becoming sensitive and Dr. Matthews has not responded or scheduled [him] for treatments yet," McLoon responded by advising Adaweh that she would attempt to talk with Dr. Matthews about his problems. (See Compl. ¶¶ 45-46, 50.) Adaweh apparently also informed Defendant McLoon that he believed that "Dr. Matthews is intentionally disregarding and disposing of my sick call slips." (See id. ¶ 49.) McLoon thereafter proceeded to view "several teeth with cavities" and promised to speak with Dr. Matthews. (See id. ¶¶ 50-52.) Adaweh repeated his complaints of lack of treatment to McLoon at a clinic call on March 30, 2009. Again, according to Adaweh, McLoon agreed to speak with Dr. Matthews. (See id. ¶¶ 71-72, 75-76.) Assuming the truth of these allegations, Adaweh is simply attempting to hold McLoon accountable for Matthews's deliberate indifference to his serious medical needs. Adaweh appears to believe that McLoon had a constitutional obligation to let someone know of his plight, but other than speaking to the dentist who was responsible for providing treatment, McLoon's options were limited.

McLoon's counsel aptly describes the allegations as being a "reverse respondeat superior" form of liability. (Mot. Dismiss at 6, Doc. No. 17.) I believe that Adaweh is attempting to assert that McLoon had a duty to intervene at some level above Dr. Matthews and thus obtain additional dental treatment for Adaweh. Under First Circuit precedent, "a police

officer has a duty to act when he sees another officer using excessive force against an arrestee or pretrial detainee if the officer could realistically prevent that force and had sufficient time to do so." Davis v. Rennie, 264 F.3d 86,113 (1st Cir. 2001). Furthermore, the First Circuit has suggested that this principle applies with equal force to corrections officers. Id. 98 n.9 ("For the same reason, at least one court has held that a prison guard must intervene when another guard uses excessive force against a prisoner"). At the same time, "the 'failure to intervene' rule applies only when an officer has 'a realistic opportunity to intercede.'" Farrah v. Gondella, 725 F. Supp. 2d 238, 246 (D. Mass. 2010) (quoting Davis, 264 F.3d at 98 n.10). The analogy simply does not carry through to a duty of a dental hygienist to intervene over the head of the dentist with whom she is working. McLoon's superiors, Kesteloot, the director of the medical staff, and Matthews, the dentist responsible for providing treatment, according to Adaweh's own allegations, were well aware of the situation. McLoon, as a dental hygienist, was not in a position to make an independent assessment about appropriate treatment.

The third defendant who has moved for dismissal is Tammy Hatch. The allegations against her in the complaint are sparse, but apparently her role at the prison was to collect sick slips from the inmates and pass on their complaints to those who actually were responsible for providing treatment. According to Adaweh, "[Hatch] used to come to Plaintiff housing pod where prisoners would inform her of their health problems either orally and/or in writings by giving her filled sick call slips." (See Compl. ¶ 6.) He claims that at some point "between 12/21/08 and 3/10/09, [he] also spoke to defendant Tammy Hatch, twice letting her know the extents of [his] dental problems, their painfulness and actually showing her [his] teeth," and that he further informed her of Dr. Matthews's hostile treatment toward him. (Id. ¶¶ 68-69.) Adaweh claims to have never received a response from Ms. Hatch. (Id. ¶ 70.) A subsequent sick

6

slip was then given to Tammy Hatch on May 20, 2009, when Adaweh again showed her his teeth. (See id. ¶¶ 79-80.) It is certainly not a reasonable inference to suggest that Hatch never passed his sick slips on, because Adaweh's own allegations are he got called to the dental clinic on March 30, 2009, for a periodic cleaning, (id. ¶ 71) and then received more intensive dental treatment in September 2009. (Id. ¶¶ 110-111.) Furthermore, Adaweh's own allegations are that the sick slips he gave to Hatch appeared in his prison records. (Id. ¶ 79.) There is no allegation that Hatch provided treatment or otherwise was involved with decisions about Adaweh's care. However, Hatch is mentioned in Adaweh's Motion to Supplement as the current director of services, apparently replacing Kesteloot. (Mot. Suppl. ¶ 15, Doc. 15.)

Based upon the foregoing, I recommend that the Court grant the motion to dismiss and dismiss the complaint as to Corizon, McLoon, and Hatch. Matthews and Kesteloot will remain as the defendants in this action.

## Motion to Supplement

With respect to amendments to complaints, Federal Rule of Civil Procedure provides "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).[2] With respect to supplemental pleadings, subsection (d) of that rule provides:

> Upon motion of a party the court may, on just terms, permit the party to serve a supplemental pleading setting forth any transaction, occurrence, or event that happened since the date of the pleading sought to be supplemented. The court may permit supplementation even though the original pleading is defective in its

---

[2] A party can amend as a matter of course within 21 days after service of a responsive pleading. Technically the "Motion to Supplement" was filed prior to the answer being due and Adaweh had the right to file an amended complaint if he chose. However, the matter has been briefed as a motion to supplement and the allegations involve a different time period than set forth in the complaint, so I have reviewed the motion in that context. However, it is worth noting that even though a different time period is involved, many of the events in the motion occurred prior to the date the original complaint was filed with this court, so it is not entirely clear what Adaweh is trying to do. He clearly wants to add Sue Ferra as a defendant, but he has not filed a proposed amended complaint adding any other new allegations.

7

statement of a claim for relief or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d).

At least one court in the First Circuit has concluded that the standards under either subsection are fungible, see Sheppard v. River Valley Fitness One, L.P., No. CIV.00–111–M, 2002 WL 197976, Fn. 6 (D.N.H. Jan 24, 2002), while another has concluded subdivision (d) gives a Court greater leeway to rein in the pleadings, because it does not contain the subsection (a) mandate that "leave shall be freely given," see New Balance Athletic Shoe, Inc. v. Puma USA, Inc., 118 F.R.D. 17, 19 (D. Mass.1987). Assuming that leave to supplement should be freely given, I nevertheless recommend that the Court deny this motion because the allegations in the supplemental pleading pertaining to Sue Ferra fail to state a claim for the same reasons as discussed above regarding the McLoon and Hatch allegations.

In his original complaint Adaweh noted, without naming any of them as defendants, that there were several doctors at the prison who provided him with medical care and that he visited with them for "chronic care" every ninety days. (Compl. ¶ 83.) According to the original complaint, beginning on January 21, 2008, Adaweh informed these chronic care physicians of his ongoing dental problems, but they refused to refer him to Dr. Matthews "because they said she got very mad at them when they referred inmates to her before." (Id. ¶ 84.)

According to Adaweh's motion to supplement, between September 20, 2009, and May 5, 2011, he was confined in the special management unit of the Maine State Prison. (Mot. Suppl. ¶1.) Beginning approximately July 10, 2010, Adaweh started filing sick slips stating he again needed dental treatment. (Id. ¶ 2.) According to Adaweh he gave numerous sick slips to the nurses and they advised him they had taken the slips to Dr. Matthews, but that it was up to her to schedule dental appointments. (Id. ¶¶ 4-6.) During this same time period Adaweh was being

seen by Dr. Sue Ferra. Dr. Ferra told Adaweh that he should keep filing sick slips with Dr. Matthews to try to obtain an appointment, but that there was nothing she could do about it. According to Adaweh, Dr. Ferra was worried that Dr. Matthews would become angry with her if she referred him for dental treatment. (Id. ¶¶ 7-13.) These facts do not present a constitutional violation by Ferra. At best Adaweh has alleged that a number of medical personnel, including a dental hygienist, McLoon, and a physician, Ferra, are sympathetic to his complaints, but are unable to deal with Dr. Matthews, the dentist responsible for providing Adaweh with dental care. The only potential constitutional violations are alleged against Matthews and Kesteloot, both of whom are alleged to have the power to do something about Adaweh's lack of dental care which he alleges is a serious medical need for which he has been deliberately denied treatment.

Adaweh also notes that Tammy Hatch is now the medical director of Corizon and that she has continued to not take any action regarding his numerous requests for dental care. (Id. ¶¶ 15-16.) He also notes, for the first time, that he chipped a tooth around the end of May 2011, and that Dr. Matthews was aware of this tooth's problems back in 2009. (Id. ¶ 17.) Since the original complaint was filed April 25, 2011, this supplemental allegation is clearly appropriate and should be allowed in an amended complaint. The supplementation related to Hatch, however, is not developed enough to negate my prior recommendation that she be dismissed from the lawsuit, based upon the allegations in the original complaint.

**Conclusion**

Based upon the foregoing I recommend that the Court deny the motion for preliminary injunction and grant the motion to dismiss on behalf of Corizon, McLoon, and Hatch. I also recommend that the Court deny the motion to supplement to add Sue Ferra as a named defendant, provided however, that Adaweh's supplemental allegation that Matthews continues to

9

refuse to provide him care and as a result he chipped another tooth in May 2011, is allowed and the remaining defendants must respond thereto.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 28, 2011